FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

NOV 0 7 2012

DAVID J MALAND, CLERK
BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 1:12-CR-119 |
| | § | (Judge Crone / Hawthorn |
| KENNY DON STANLEY (1), | § | |
| TANNER LYNN BOURQUE | § | UNDER SEAL |
| a/k/a "Two Shoes" | § | |
| a/k/a "Hitman" (2), | § | |
| KRISTOPHER LEIGH GUIDRY | § | |
| a/k/a "Hollywood" (3), and | § | |
| VICKI STARK-FITTS (4) | § | |
| | § | NOTICE OF SPECIAL FINDINGS |

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

GENERAL ALLEGATIONS

Introduction

1.  The SWS is a race-based organization operating inside and outside of jails and prisons, primarily in Texas. SWS was founded during the 1990s by inmates within the Texas Department of Criminal Justice. SWS, which was founded as the "Stupid Woods," is also known as "Solid Wood Soldiers" and "Separate White State." Although the founders established SWS for protection of white inmates and advancement of white supremacy and white separatism, SWS has expanded its purview to include illegal activities for profit.

2.  SWS protects its power, territory, and profits through intimidation and

Indictment - Page 1

violence, including assaults, robbery, and murder. SWS is a group of individuals associated in fact whose activities--trafficking methamphetamine, firearms, and forged currency--affect interstate commerce. SWS has the following chain of command: president, vice-president, council, major, captain, sergeant, and soldier. The basic ranking structure remains constant, but there are frequent personnel changes--promotions, demotions, and terminations. SWS members, prospects, and associates refer to the gang as the "wolf pack," "pack," or "family."

3.  SWS has a written constitution and bylaws premised on the philosophy of "14/10." "14" refers to the fourteen words: "We must secure the existence of our race and future for all white children." "10" refers to the ten-word creed: "Unity is the only solution to the white man's revolution." The constitution and bylaws outline the duties, responsibilities, and requirements associated with membership and are thus the foundation of the organization.

4.  SWS members are recruited from inside and outside of jail and prison. Prospective members, called "prospects," must be "white" and sponsored by another SWS member. Prospects must serve a probationary period during which their conduct is observed by SWS members. During this period, prospects study and learn the SWS constitution and by-laws and may be required to "work" for the enterprise. "Work" means illegal activity. Prospects are considered part of the SWS family and are therefore subject to the rules and orders of the enterprise, including violent beatings known as

"disciplines."

5. SWS leaders determine if and when a prospect is eligible for initiation into membership. SWS initiation requires a "blood in, blood out" commitment. That is, prospects are subject to a violent beating in order to become a "member." Members or prospects that leave SWS are likewise subject to a violent beating.

6. SWS members often obtain tattoos to signify their loyalty to SWS. New members commonly receive on their left torso a tattoo of a large wolf paw-print surrounded by the letters "SWS." The letters "S" are written to look like Nazi lightning bolts. The paw is imprinted with the letters "H," "R," "L," and "C" placed above the number "4." The four letters--H, R, L, and C--are supposed to mean "Honor, Respect, Loyalty, and Courage." SWS members are also commonly tattooed with the numbers "14" and "10," which symbolize the SWS "14-word belief" and "10-word creed."

7. In addition to members and prospects, SWS employs associates. Associates are individuals closely associated with the organization. Some SWS associates are female. While females have traditionally been barred from membership, females who engage in criminal activity for the benefit of SWS are sometimes referred to as "feathers."

8. SWS members, prospects, and associates are required to further SWS goals through criminal activity. Members and prospects are therefore required to commit that they will follow without question any order of SWS leadership. In particular, members and prospects are required, when ordered, to perform violent acts without hesitation.

Maintaining power and avoiding loss of stature motivates SWS members, prospects, and associates to commit violent acts against individuals and groups believed to be disrespectful or detrimental to SWS. Members and prospects who do not fulfill their commitment to SWS are subject to disciplines. Such disciplines are carried out by SWS members, prospects, or associates and may include assault and murder.

9. SWS members and prospects are required to pay monthly dues to SWS. Dues are payable at monthly gang meetings--known as "church" meetings. The conduct of criminal activity by SWS members is often discussed and voted upon at church meetings. Church meetings are generally held in locations where secrecy can be maintained. SWS members use the term "church" when referring to gang meetings.

### The Racketeering Enterprise

10. SWS, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. SWS constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. SWS operated in the Eastern District of Texas and elsewhere.

### Purposes of the Enterprise

11. The purposes of the enterprise include the following:

      a.    Preserving and protecting power, territory, and profits through intimidation, violence, threats of violence, assaults, robbery, and murder;

      b.    Promoting and enhancing the activities of members, prospects, and associates;

      c.    Keeping non-members and members, prospects, and associates in fear of the enterprise through threats of violence and actual violence; and

      d.    Enriching the members, prospects, and associates of SWS through illegal narcotics trafficking, fraud, and other illegal activities.

### Means and Methods of the Enterprise

12.    The means and methods by which the members, prospects, and associates conduct and participate in the affairs of the SWS criminal enterprise include the following:

      a.    SWS members, prospects, and associates threaten to commit and commit acts of violence, including assault and murder, to protect and expand their criminal operations and to maintain their status;

      b.    SWS members, prospects, and associates promote a climate of fear through violence and threats of violence;

      c.    SWS members promulgate rules, as documented in their constitution and by-laws, to be followed by all participants;

      d.    To enforce the rules and promote discipline, SWS members, prospects, and associates commit and threaten to commit assault and murder against those participants in the enterprise who violate rules or orders, or who pose a threat to the enterprise;

e. To generate income, SWS members, prospects, and associates engage in illegal activities under the protection of the enterprise, including illegal narcotics trafficking, fraud, and other illegal activities;

f. For intimidation, protection, and armed combat, SWS members, prospects, and associates acquire, carry, and use firearms; and

g. To keep secret their activities, SWS members use a network of hubs to relay messages among members, prospects, and associates.

## The Defendants

13. The defendants participated in the operation and management of the enterprise as follows:

   a. The defendant, **Kenny Don Stanley**, was a soldier for SWS;

   b. The defendant, **Tanner Bourque, a/k/a "Two Shoes," a/k/a "Hitman,"** was a council member for SWS;

   c. The defendant, **Kristopher Leigh Guidry, a/k/a "Hollywood,"** was a major for SWS;

   d. The defendant, **Vicki Stark-Fitts,** was an associate of SWS.

14. The SWS, through its members, prospects, and associates, engaged in racketeering activity as defined in 18 U.S.C. § 1959(b)(1) and 1961(1), including murder, in violation of Texas Penal Code § 19.02 & 19.03, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. 846, and distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. 841(a)(1).

**Count One**

Violation: 18 U.S.C. § 1959(a)(5)
(Violent Crimes in Aid of Racketeering
Activity - Conspiracy to Murder James
Lee Sedtal, a/k/a "Lil Bit")

Overview

15. On or about March 14, 2011, **Kenny Don Stanley, Tanner Lynn Bourque, a/k/a "Two Shoes," a/k/a "Hitman," Kristopher Leigh Guidry, a/k/a "Hollywood,"** and **Vicki Stark-Fitts** murdered James Lee Sedtal, a/k/a "Lil Bit," in Liberty County, Texas. The defendants murdered Sedtal on behalf of SWS, after Sedtal assaulted Michael Word, an Aryan Brotherhood of Texas (ABT) associate. ABT was poised to retaliate against SWS, and **Bourque, Guidry, Stanley,** and **Stark-Fitts** sought to maintain and increase their position within SWS by murdering Sedtal.

16. At all times relevant to this indictment, as set forth in paragraphs one through fourteen of the general allegations, which are re-alleged here and incorporated by reference as if set forth in full, SWS constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact, which is engaged in or the activities of which affect, interstate and foreign commerce.

17. Starting on or about March 11, 2011, and continuing until on or about March 14, 2011, in the Eastern District of Texas and elsewhere, for the purpose of maintaining and increasing position within SWS, an enterprise engaged in racketeering activity, **Kenny Don Stanley, Tanner Lynn Bourque, a/k/a "Two Shoes," a/k/a**

Indictment - Page 7

"Hitman," **Kristopher Leigh Guidry**, a/k/a "Hollywood," and **Vicki Stark-Fitts**, defendants, and others known and unknown to the grand jury, did intentionally and knowingly conspire to murder James Lee Sedtal a/k/a "Lil Bit," in violation of Texas Penal Code sections 19.02(b)(1) and 15.02.

In violation of 18 U.S.C. § 1959(a)(5).

### Count Two

> Violation: 18 U.S.C. § 1959(a)(1)
> (Violent Crimes in Aid of Racketeering Activity - Murder of James Lee Sedtal a/k/a "Lil Bit")

18.  At all times relevant to this indictment, as set forth in paragraphs one through fourteen of the general allegations, which are re-alleged here and incorporated by reference as if set forth in full, SWS constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact which is engaged in or the activities of which affect, interstate and foreign commerce.

19.  On or about March 14, 2011, in the Eastern District of Texas, for the purpose of maintaining and increasing position within SWS, an enterprise engaged in racketeering activity, **Kenny Don Stanley, Tanner Lynn Bourque**, a/k/a "Two Shoes," a/k/a "Hitman," **Kristopher Leigh Guidry**, a/k/a "Hollywood," and **Vicki Stark-Fitts**, defendants, aiding each other, did intentionally and knowingly murder James Lee Sedtal, a/k/a "Lil Bit," in violation of Texas Penal Code sections 19.02(b)(1) and 7.01.

In violation of 18 U.S.C. §1959 (a)(1) and 18 U.S.C. §2.

## Count Three

> Violation: 18 U.S.C. § § 924(j)
> (Possession and Discharge of a Firearm
> in Furtherance of a Crime of Violence
> Resulting in Death)

20.  At all times relevant to this indictment, as set forth in paragraphs one through fourteen of the general allegations, which are re-alleged here and incorporated by reference as if set forth in full, SWS constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact which is engaged in or the activities of which affect, interstate and foreign commerce.

21.  On or about March 14, 2011, in the Eastern District of Texas, **Kenny Don Stanley, Tanner Lynn Bourque, a/k/a "Two Shoes," a/k/a "Hitman," Kristopher Leigh Guidry, a/k/a "Hollywood,"** and **Vicki Stark-Fitts**, defendants, aiding each other, in the course of committing a violation of 18 U.S.C. § 924(c), did knowingly cause the death of a person through the use of a firearm, which killing was murder as defined in 18 U.S.C. § 1111, in that the defendants willfully, deliberately, maliciously and with premeditation murdered a human being, to wit, James Lee Sedtal, a/k/a "Lil Bit," unlawfully and with malice aforethought.

In violation of 18 U.S.C. § 924(j) and 18 U.S.C. § 2.

### NOTICE OF SPECIAL FINDINGS AS TO KENNY DON STANLEY

22.  The grand jury re-alleges the accusations of Counts Two and Three of the indictment.

Indictment - Page 9

23. With respect to Count Two and Three, the grand jury makes the following special findings that the defendant, **Kenny Don Stanley**:

a. was 18 years of age or older at the time of the offense charged in Counts Two and Three (18 U.S.C. §3591(a));

b. intentionally killed James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3591(a)(2)(A));

c. intentionally inflicted serious bodily injury that resulted in the death of James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3591(a)(2)(B));

d. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and James Lee Sedtal, a/k/a "Lil Bit", died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and James Lee Sedtal, a/k/a "Lil Bit," died as a result of the act (18 U.S.C. § 3591(a)(2)(D));

f. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim (18 U.S.C.

        § 3592(c)(6)).

    g.    committed the offense after substantial planning and premeditation to cause the death of James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3592(c)(9)).

## NOTICE OF SPECIAL FINDINGS AS TO TANNER LYNN BOURQUE

24.    The grand jury re-alleges the accusations of Counts Two and Three of the indictment.

25.    With respect to Counts Two and Three, the grand jury makes the following special findings that the defendant, **Tanner Lynn Bourque, a/k/a "Two Shoes", a/k/a "Hitman"**:

    a.    was 18 years of age or older at the time of the offense charged in Counts Two and Three (18 U.S.C. § 3591(a));

    b.    intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and James Lee Sedtal, a/k/a "Lil Bit," died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

    c.    intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and James Lee Sedtal, a/k/a "Lil Bit," died

as a result of the act (18 U.S.C. § 3591(a)(2)(D));

d. committed the offense after previously been convicted of a state offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm against another person (18 U.S.C. § 3592(c)(2));

e. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim (18 U.S.C. § 3592(c)(6)).

f. committed the offense after substantial planning and premeditation to cause the death of James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3592(c)(9)).

## NOTICE OF SPECIAL FINDINGS AS TO KRISTOPHER LEIGH GUIDRY

26. The grand jury re-alleges the accusations of Counts Two and Three of the indictment.

27. With respect to Count Two and Three, the grand jury makes the following special findings that the defendant, **Kristopher Leigh Guidry, a/k/a "Hollywood"**:

a. was 18 years of age or older at the time of the offense charged in Counts Two and Three (18 U.S.C. § 3591(a));

b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and James

    Lee Sedtal, a/k/a "Lil Bit", died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and James Lee Sedtal, a/k/a "Lil Bit" died as a result of the act (18 U.S.C. § 3591(a)(2)(D));

d.  committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim (18 U.S.C. § 3592(c)(6)).

e.  committed the offense after substantial planning and premeditation to cause the death of James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3592(c)(9));

## NOTICE OF SPECIAL FINDINGS AS TO VICKI STARK-FITTS

28.  The grand jury re-alleges the accusations of Counts Two and Three of the indictment.

29.  With respect to Count Two and Three, the grand jury makes the following special findings that the defendant, **Vicki Stark-Fitts**:

a.  was 18 years of age or older at the time of the offense charged in Counts Two and Three (18 U.S.C. § 3591(a));

b.  intentionally participated in an act, contemplating that the life of a person

would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and James Lee Sedtal, a/k/a "Lil Bit," died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

c. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and James Lee Sedtal, a/k/a "Lil Bit," died as a result of the act (18 U.S.C. § 3591(a)(2)(D));

d. committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim (18 U.S.C. § 3592(c)(6)).

e. committed the offense after substantial planning and premeditation to cause the death of James Lee Sedtal, a/k/a "Lil Bit" (18 U.S.C. § 3592(c)(9)).

A TRUE BILL

*[signature]*
GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

*[signature]*                                   11/07/2012
John B. Ross                                    Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § | |
| VS. § § | CRIMINAL NO. 1:12-CR-119 (Judge _____) |
| KENNY DON STANLEY (1), § TANNER LYNN BOURQUE § a/k/a "Two Shoes" § a/k/a "Hitman" (2), § KRISTOPHER LEIGH GUIDRY § a/k/a "Hollywood" (3), and § VICKI STARK-FITTS (4) § § | UNDER SEAL NOTICE OF SPECIAL FINDINGS |

**NOTICE OF PENALTY**

**Count One**

VIOLATION: 18 U.S.C. § 1959(a)(5)

PENALTY: A fine of not more than $250,000; imprisonment for not more than ten (10) years; a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT:    $100

**Counts Two and Three**

VIOLATION: 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 924(j)

PENALTY: Punishment by Death or Life imprisonment; a fine not to exceed $250,000, or both.

SPECIAL ASSESSMENT: $100.00

Indictment - Page 15