```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF TEXAS
 2                   BEAUMONT DIVISION

 3
     UNITED STATES OF AMERICA  | DOCKET NO. 1:12CR119
 4                             |
                               | MARCH 5, 2014
 5   VS.                       |
                               | 10:46 A.M.
 6                             |
     VICKI STARK-FITTS (4)     | BEAUMONT, TEXAS
 7
     -----------------------------------------------------------
 8

 9         VOLUME 1 OF 1, PAGES 1 THROUGH 19

10      REPORTER'S TRANSCRIPT OF SENTENCING HEARING

11        BEFORE THE HONORABLE MARCIA A. CRONE
                UNITED STATES DISTRICT JUDGE
12
     -----------------------------------------------------------
13

14  APPEARANCES:

15  FOR THE GOVERNMENT:    JOHN BUCKLEY ROSS
                           U.S. ATTORNEY'S OFFICE
16                         350 MAGNOLIA
                           SUITE 150
17                         BEAUMONT, TEXAS 77701

18
    FOR THE DEFENDANT:     STEVEN ROSEN
19                         ATTORNEY AT LAW
                           440 LOUISIANA
20                         SUITE 800
                           HOUSTON, TEXAS 77002
21

22  COURT REPORTER:        TONYA B. JACKSON, RPR-CRR
                           FEDERAL OFFICIAL REPORTER
23                         300 WILLOW, SUITE 239
                           BEAUMONT, TEXAS  77701
24
         PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
25     TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

1 [OPEN COURT, DEFENDANT PRESENT.]
2 THE COURT: This is Case No. 1:12CR119,
3 Defendant 4, *United States of America versus Vicki*
4 *Stark-Fitts.*
5 Are you ready to proceed?
6 MR. ROSS: Good morning, your Honor. I'm John
7 Ross. I represent the USA, and we are ready to proceed
8 with the sentencing hearing.
9 MR. ROSEN: Good morning, judge. Good to see
10 you again. Steven Rosen for Vicki Fitts, and we are
11 ready to move forward.
12 THE COURT: All right. Please come forward.
13 Have counsel and defendant read and discussed
14 the presentence report, including any revisions?
15 MR. ROSEN: We have, your Honor.
16 THE COURT: Has counsel fully explained the
17 report to the defendant?
18 MR. ROSEN: I have, your Honor.
19 THE COURT: And, Ms. Stark-Fitts, do you fully
20 understand the presentence report?
21 THE DEFENDANT: Yes, ma'am.
22 THE COURT: Does counsel or defendant wish to
23 make any comments, additions, or corrections to the
24 report, aside from your objections?
25 MR. ROSEN: We do not, your Honor.

1          THE COURT:  And, Ms. Stark-Fitts, does the
2    report adequately cover your background?
3          THE DEFENDANT:  Yes, ma'am.
4          THE COURT:  Has the government read the
5    report; and does it wish to make any comments, additions,
6    or corrections?
7          MR. ROSS:  The government has, your Honor; and
8    we do not, your Honor.
9          THE COURT:  All right.  If you wish to address
10   your objections at this time, then.
11         MR. ROSEN:  Your Honor, I'll let my objections
12   stand for themselves on the report.
13         THE COURT:  Well, why don't you remind me what
14   they are.
15         MR. ROSEN:  Okay.  Well, there's one issue --
16   and that's really the one issue -- is Ms. Fitts had pled
17   guilty to a federal gun count and she was under the
18   understanding, the comprehension that it would never be
19   used against her; and that was done orally.  And we
20   brought that to Mr. Ross' attention; and that's the only
21   thing that we really have to argue, judge.
22         THE COURT:  Well, the Objection 1 talks about
23   no evidence that she provided guns used by Sedtal to
24   shoot and wound an associate of the Aryan Brotherhood.  I
25   think in the factual basis she admits that.

1               MR. ROSEN:  Yes.
2               THE COURT:  That objection is overruled.
3               The other one has to do with she wants --
4    claiming her participation was minimal and she wants a
5    role reduction.  Seems to me, looking at this case, she
6    was right in the thick of everything in all these
7    different activities that were happening over a period of
8    time, from drug trafficking to providing guns to these
9    people and then kind of setting up this hit and like
10   concealing the body and then fleeing to Arlington.  It's
11   just -- it seems like she wasn't entitled to a mitigating
12   role adjustment.  So, that objection is overruled.
13              All right.  Then there's the objection that
14   she was assessed three points for prior conviction for
15   felon in possession of a firearm.
16              And is that what you're complaining about now?
17              MR. ROSEN:  Yes, your Honor.
18              THE COURT:  Okay.  Do you want to address
19   that?
20              MR. ROSS:  May I ask the probation department:
21   Does that change the guidelines in any way if that were
22   true?
23              PROBATION OFFICER:  We don't know of any
24   authority that the guidelines gives us not to assess
25   criminal history points for prior conviction.

1 MR. ROSS: Okay. And, your Honor, the
2 government has reviewed the probation officer's responses
3 to the objections; and we stand with her on those
4 responses.
5 THE COURT: Well, this conviction is for a
6 RICO, murder and distribution of methamphetamine; and
7 that -- I think that was an unrelated gun charge, as I
8 recall.
9 MR. ROSEN: Correct, yes.
10 THE COURT: It was a different gun. So, I
11 don't think that that should be the same thing. I mean,
12 I think you should get criminal history points for that
13 because it was a separate deal. It's not subsumed within
14 this activity.
15 MR. ROSEN: I'm just pointing that out, judge,
16 because Ms. Fitts wanted me to make it known that that's
17 what was done orally, not in writing; and I said I would
18 to the court.
19 THE COURT: So, I don't see anything that
20 shows the case.
21 MR. ROSEN: Right. There's nothing in
22 writing.
23 THE COURT: I mean, she wasn't exactly charged
24 in this case with that; but that doesn't mean you can't
25 use it for criminal history points for prior conviction.

1  I think that would be appropriate.
2           MR. ROSEN:  Yes, your Honor.
3           THE COURT:  So, that objection is overruled.
4           Okay.  To the extent the court previously
5  deferred acceptance of the plea agreement, it is now
6  accepted.
7           The court finds that the information contained
8  in the presentence report has sufficient indicia of
9  reliability to support its probable accuracy.
10          The court adopts the factual findings,
11 undisputed facts, and guideline applications in the
12 presentence report.  Based upon a preponderance of the
13 evidence presented and the facts in the report, while
14 viewing the Sentencing Guidelines as advisory, the court
15 concludes that the total offense level is 40, the
16 criminal history level is III, which provides for an
17 advisory guideline range of 360 months to life.
18          Does defendant's counsel wish to make any
19 remarks on behalf of the defendant?
20          MR. ROSEN:  I would, your Honor.
21          THE COURT:  Okay.  Go ahead.
22          MR. ROSEN:  May I proceed, judge?
23          THE COURT:  Yes.
24          MR. ROSEN:  Thank you for allowing me to speak
25 in front of this court and ladies and gentlemen in the

1  courtroom and officers of the court.
2              THE COURT:  Let me also point out if the
3  objection was sustained about this criminal history,
4  which would have put her at 40, criminal history II, that
5  would have been a guideline range of 324 to 405 months.
6              MR. ROSEN:  Yes, your Honor.
7              THE COURT:  She is going to be sentenced
8  within that same guideline range; so, it shouldn't
9  matter.
10             MR. ROSEN:  Thank you.  Yes, your Honor.
11             THE COURT:  Okay.  Go ahead.
12             MR. ROSEN:  I've come to know this young lady,
13 judge.  She has been incarcerated for I think the last
14 three years and because -- on this case the past -- since
15 January of 2013.  And I, who have been practicing law for
16 32 years now, working on 33, you try to personalize your
17 client the best you can.  You try to learn about them,
18 feel them, sense them, touch them.
19             Vicki Fitts did a horrible thing, judge.  She
20 took the life of another human being.  How, why, where,
21 when?  How does a young lady who marries the love of her
22 life, gives birth to three children, who is going to be
23 50 years old next week, how in this period of time did
24 she allow herself to get into a position where you can't
25 say no, where you can't stop it, where you just lose

1 control of your life?

2 And it's hard coming in as a lawyer to argue
3 in front of a learned judge. I have known you for a long
4 time; and you've seen it, you've heard it, you've watched
5 it. Not all, but we're always learning; and I respect
6 that. I'm asking you to rip down that rearview mirror.
7 She came in here and accepted responsibility. She is
8 guilty of murder. What do you do now?

9 Can you show an individual who says in open
10 court that she is guilty of murder compassion? Can you
11 show her the ability, ma'am, you're going to spend a long
12 time, maybe the rest of your life, maybe 30 years in a
13 jail cell; do I trust you where maybe you can help the
14 next young lady that comes into a jail cell that comes in
15 and says the right word about drinking, about alcohol,
16 about men, about learning how to educate yourself?

17 I believe that Vicki Fitts has that ability,
18 judge. I really do. And I'm asking this court --
19 because I'm going to shut up and let her speak to you
20 because that's what's important. I have watched life and
21 death, judge; and if I choke up, it's because I feel it.
22 The last two years my wife has gone through a terrible
23 bout with cancer. I've been at M.D. Anderson. And
24 please don't feel sorry for me, for my wife. She is
25 doing fine physically. I have watched life and death,

and my wife thinks I have been traumatized. I don't know. I love life. I appreciate life. I love to laugh. I love to make people laugh. I love to approach people. And it hurts when you come back two weeks later and they're not there. And I'm having a difficult time with this because a young man's life was taken and Vicki Fitts was part of it. And I say how can I stand in front of this judge and talk about life and death and freedom and joy and peace when I'm going through what I'm going through now? You get a new appreciation for life.

This is life. I'm asking this court, based on their experience and their knowledge and their process in life, to give this young lady who has a lovely daughter who just gave, lucky enough, birth to a child, let her have that hope that maybe one day she can be free. Have that ray of hope when she looks outside that there's a hope, that a judge in Beaumont, Texas, believed in me now. She's changed her life, judge; and hopefully it's to the better. Thank you for allowing me to talk to you.

THE COURT: All right. Does the defendant wish to make a statement?

THE DEFENDANT: Yes, ma'am. I think what went wrong with me is in 2002 my son was killed in front of me, my dad died, my baby brother dropped dead, my best friend and my son's father dropped dead, and I just -- I

1 didn't want to leave the house. I wanted nobody to keep
2 my daughter. And eventually I started using drugs, and
3 then I started selling drugs. And I know that was a
4 horrible mistake. I should have never done it, but I
5 didn't -- I don't know. I was just very depressed and
6 paranoid. And I should have never allowed people around
7 me like I did and hung out with, and I should have
8 stopped that murder. I wish to God I would have.
9 　　　　　Every night I lay in bed, and I wish I could
10 trade places with "Lil Bit." He was my friend. And I
11 pray for his family every night because I know what it
12 feels like to lose a young son like that. And I have
13 great remorse. I really do. I wish I could change
14 things, but I can't. But I do help young girls when they
15 come in the cell, and I tell them -- talk to them about
16 drugs and alcohol and gangs and just life in general, try
17 to get them on the right path because they can end up
18 like me so very easily.
19 　　　　　And I just -- I have a new grandbaby; and I
20 just hope and pray to God that you can find it in your
21 heart to give me a chance to do different, a second
22 chance, and not make me spend the rest of my life in
23 prison. And I'm sorry I didn't stop them from
24 murdering -- for that murder. I would change it if I
25 could. I really would. And I'm sorry. I am truly sorry

to him and his family and to the population in general. It's not right to take a life. I know what it feels like to have someone take somebody's life that you love, and it's not -- it's the worst, worst pain you can ever feel; and I'm just really truly sorry that I was any part of it. Thank you.

THE COURT: All right. Thank you.

Does the attorney for the government wish to make any remarks?

MR. ROSS: Yes, your Honor. First, in response to the allocution by Ms. Fitts, your Honor, I suggest to the court, with respect to Ms. Fitts, that they're crocodile tears that she is bringing to the court today and I submit to the court they're not sincerely felt.

Your Honor, the question before the court today in this sentencing is simply this, your Honor: Does Vicki Fitts deserve less of a sentence than her co-defendants, Tanner Bourque, Chris Guidry, and Kenny Stanley? And I submit to the court she doesn't.

The court has alluded in the court's comments that she may indeed receive a sentence less than life today; but I submit to the court, your Honor, that she does not deserve less of a sentence than those young men.

The reason is this -- or the reasons: No. 1,

if you overlay the factual basis for Ms. Fitts over the factual basis for the other men, it's identical. The only thing different about Ms. Fitts' case versus their cases is that she was not a patched-in member of SWS. So, the element was lacking as to Ms. Fitts that she actually committed this murder in furtherance of that enterprise. That's the only difference.

Now, I'll submit to the court's consideration this point. Methamphetamine trafficking is the essence, the stock and trade, of this organization. It's not their beliefs or their patches that they wear. And this court well knows who is in charge in a drug distribution conspiracy. It's the supplier that's the shot caller. And in this case Vicki Fitts was that person to these young men. So, not only -- there's an argument to be made, your Honor, that she is more culpable than these individuals.

And that will conclude my statements to the court, your Honor. We'd ask the court to consider the most severe sentence possible.

I will add this, your Honor. There will be a time -- I do foresee a time for Ms. Fitts of a Rule 35 motion in this case perhaps. We have ongoing meetings with Ms. Fitts, and that's known to the people that are in this courtroom. It's not a secret. There's two of

1  the four of them who are in the same position, and I
2  foresee them -- with the exception of Tanner Bourque, I
3  anticipate coming back to the court perhaps with a
4  Rule 35 motion; but that time, your Honor, is not today.
5  And I believe and submit to the court she ought to be
6  every bit as responsible in terms of the sentence -- as
7  should be reflected in her sentence, that she is no
8  better than them in this.  Thank you, your Honor.
9             THE COURT:  All right.  Does counsel know of
10 any reason why sentence should not be imposed at this
11 time?
12            MR. ROSEN:  No, your Honor.
13            THE COURT:  Pursuant to the Sentencing Reform
14 Act of 1984 and having considered the factors noted in 18
15 U.S.C., Section 3553(a) and after having consulted the
16 advisory Sentencing Guidelines, it is the judgment of the
17 court that the defendant, Vicki Stark-Fitts, is hereby
18 committed to the custody of the Bureau of Prisons to be
19 imprisoned for 378 months as to the single-count
20 information.  The sentence is within an advisory
21 guideline range that's greater than 24 months; and the
22 specific sentence is imposed after consideration of the
23 factors set forth in 18 U.S.C., Section 3553(a).
24            The court recommends to the Bureau of Prisons
25 that the defendant receive appropriate mental health

treatment while imprisoned.

The court recommends to the Bureau of Prisons that the defendant receive appropriate drug treatment while imprisoned.

The court finds the defendant does not have the ability to pay a fine. The court will waive the fine in this case.

It is ordered the defendant shall pay the United States a special assessment of $100, which is due and payable immediately. Any and all financial penalties shall be made payable by cashier's check or money order made out to the United States District Court and forwarded to the Fine and Restitution Section, U.S. Courts, 1910 E. Southeast Loop 323, No. 287, Tyler, Texas 75701.

Upon release from imprisonment, the defendant shall be on supervised release for a term of 5 years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another, federal, state, or local crime; shall comply with the standard conditions that have been adopted by this court; and shall comply with the

 1  following additional conditions:
 2           The defendant shall not possess a firearm,
 3  ammunition, destructive device, or any other dangerous
 4  weapon.
 5           The defendant shall provide the probation
 6  officer with access to any requested financial
 7  information for purposes of monitoring defendant's
 8  sources of income.
 9           The defendant shall be required to submit to a
10  drug test within 15 days of release on supervised release
11  and at least 2 periodic drug tests thereafter as directed
12  by the probation officer.
13           The defendant shall participate in a program
14  of testing and treatment for drug abuse under the
15  guidance and direction of the United States Probation
16  Office until such time as the defendant is released from
17  the program by the probation officer.
18           The defendant shall pay any cost associated
19  with treatment and testing.
20           Under the guidance and direction of the United
21  States Probation Office, the defendant shall participate
22  in a program of psychiatric and mental health services
23  and shall comply with any medication requirements as
24  prescribed by the treatment provider.
25           The defendant shall pay any cost associated

with treatment and testing.

        The defendant shall cooperate in the collection of DNA as directed by the probation officer.

        The court finds this to be a reasonable sentence in view of the nature and circumstances of the offense entailing the defendant's association with a racketeer influenced and corrupt organization (a white supremacist gang known as "Solid Wood Soldiers" or "Separate White State," "SWS" for short) that engaged in murder and the distribution of methamphetamine; her supplying members of the organization with crystal methamphetamine for distribution, as well as firearms; her participation in planning, providing transportation covering up, and fleeing the scene of the murder of another member of the gang; the subsequent discovery of loaded firearms in her residence and her vehicle; her criminal history including prior convictions for endangering a child, driving while intoxicated, possession of methamphetamine, theft of property, and felon in possession of a firearm; her mental health problems; and her history of substance abuse. It will serve as just punishment, promote respect for the law, and deter future violations of the law.

        You have a right to appeal your conviction if you believe that your guilty plea was somehow unlawful or

1 involuntary or if there was some other fundamental defect
2 in the proceedings that was not waived by your guilty
3 plea.  You have a statutory right to appeal your sentence
4 under certain circumstances, particularly if you think
5 the sentence is contrary to law.  A defendant, however,
6 may waive those rights as part of a plea agreement; and
7 you've entered into a plea agreement which waives certain
8 rights to appeal your conviction and sentence.
9            With the exception of the reservation of the
10 right to appeal on specified grounds set forth in the
11 plea agreement, you've waived any appeal, including
12 collateral appeal, of any error which may have occurred
13 surrounding the substance, procedure, or form of the
14 conviction and sentence in this case.  Such waivers are
15 generally enforceable; but if you believe the waiver is
16 unenforceable, you can present that theory to the
17 Appellate Court.
18            With few exceptions, any notice of appeal must
19 be filed within 14 days of judgment being entered in your
20 case.  If you're unable to pay the cost of an appeal, you
21 may apply for leave to appeal *in forma pauperis*.  If you
22 so request, the clerk of the court will prepare and file
23 a notice of appeal on your behalf.
24            The presentence report is made part of the
25 record and is placed under seal except counsel for the

1 government and defense may have access to it for purposes
2 of appeal.
3        Were there any other counts?
4        MR. ROSS: Yes, ma'am, your Honor. We will
5 dismiss the remaining counts as they relate to Ms. Fitts.
6        THE COURT: She pled to an information. So,
7 was there an indictment?
8        MR. ROSS: There is an indictment, your Honor.
9 I believe the -- we will move to dismiss the remaining
10 counts in any previous indictments in this case, your
11 Honor, as they relate to Ms. Fitts.
12        THE COURT: All right. Very well.
13        The defendant is remanded to the custody of
14 the United States Marshal and then to the custody of the
15 United States Federal Bureau of Prisons to begin the
16 service of sentence.
17        Is there a particular facility you wish to
18 request?
19        MR. ROSEN: She would request College Station.
20        THE COURT: The Bryan facility?
21        MR. ROSEN: Yes, your Honor.
22        THE COURT: Okay. I'll recommend that. I
23 just -- I'm not sure she would qualify for that.
24        MR. ROSEN: I'm not either.
25        THE COURT: With guns and such a long

1  sentence, I think Carswell might be a more appropriate
2  destination.
3             MR. ROSEN:  It's out of my hands, judge.
4             THE COURT:  Okay.  Well, I don't know if I can
5  in good faith recommend Bryan, actually.
6             MR. ROSEN:  Whatever you do, judge, we abide
7  by.  I understand.
8             THE COURT:  Well, I mean, I think Carswell
9  would be better than just no other place because at least
10 it's in Texas where people could visit.
11            MR. ROSEN:  Yes.
12            THE COURT:  I think that's the appropriate
13 destination.
14            MR. ROSEN:  Okay.
15            THE COURT:  All right.  Thank you.
16            MR. ROSEN:  Thank you, your Honor, for that.
17            THE COURT:  All right.  If there's nothing
18 further, then you're excused.
19            MR. ROSEN:  Thank you, judge, for hearing us.
20            (Proceedings concluded, 11:06 a.m.)
21

22 COURT REPORTER'S CERTIFICATION

23            I HEREBY CERTIFY THAT ON THIS DATE, JULY 7,
   2015, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
24 RECORD OF PROCEEDINGS.

25                        /s/
                          TONYA JACKSON, RPR-CRR